REBECCA D. EISEN, State Bar No. 96129
SHANNON BETTIS NAKABAYASHI, State Bar No. 215469
MORGAN, LEWIS & BOCKIUS LLP
One Market, Spear Street Tower
San Francisco, CA 94105-1126
Tel: 415.442.1000
Fax: 415.442.1001

Attorneys for Defendant
AGILENT TECHNOLOGIES, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LYNN DINORSCIA, MARGARET D. FRITZ, RHONDA PAYNE, RUTH J. WILLIAMS AND TIFFANY R. WILSON,<br><br>Plaintiffs,<br><br>vs.<br><br>AGILENT TECHNOLOGIES, INC. AND DOES 1 through 200, Inclusive,<br><br>Defendants. | Case No. C 04 5436 SC<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT AGILENT TECHNOLOGIES, INC. MOTION FOR TRANSFER OF VENUE**<br>**(28 U.S.C. § 1404(a))**<br><br>Date: April 1, 2005<br>Time: 10:00 a.m.<br>Judge: Senior Judge Samuel Conti<br>Courtroom: 1, 17th Floor<br><br>Date of Filing: January 14, 2005 |

**I.    INTRODUCTION**

Plaintiffs Lynn DiNorscia, Margaret D. Fritz, Rhonda Payne, Ruth J. Williams and Tiffany R. Wilson (collectively "Plaintiffs") have chosen to litigate their claims against Defendant Agilent Technologies, Inc. ("Agilent" or "Defendant") in a forum with which they have absolutely no connection. All five women were employed at Agilent's Little Falls, Delaware facility. All five currently live on the East Coast, in Delaware or New Jersey. The majority of the witnesses in this matter reside in Delaware, Pennsylvania or New Jersey and not a single percipient witness resides in the Northern District of California. In short, Plaintiffs could not have found a more *inconvenient* forum for this action. This case should be transferred to the

forum where all events relevant to this case took place and the forum most convenient for the witnesses and parties – the United States District Court for the District of Delaware.

## II. STATEMENT OF FACTS

### A. Defendant Agilent Technologies, Inc.

Agilent is a global technology company that was created in 1999 from elements of the Hewlett-Packard Company. Declaration of Sally Melvick (" Melvick Decl.") ¶ 2. Agilent has five separate lines of business or business groups, each of which has its own economic base, customers, and organizational structure. Melvick Decl. ¶ 2. These are the Automated Test Group ("ATG"), Semiconductor Products Group ("SPG"), Communications Solutions Group ("CSG"), Life Sciences and Chemical Analysis Group ("LSCA"), and the Electronic Products and Solutions Group ("EPSG"). Melvick Decl. ¶ 2. In addition, the Global Infrastructure Organization (GIO), a separate business organization within Agilent, provides general staff support in certain areas to the other business groups. Melvick Decl. ¶ 2. Each of Agilent's five business groups has facilities throughout the world and each provides products or services to a separate market. Melvick Decl. ¶ 2.

### B. Plaintiffs' Employment With Agilent.

During their employment with Agilent, the named Plaintiffs worked exclusively for LSCA at the Little Falls facility in Willmington, Delaware. Melvick Decl. ¶ 4. LSCA is a leading provider of instrument systems that enable the identification, quantification, analysis and testing of the biological, atomic, molecular and physical properties of thousands of substances and products. Melvick Decl. ¶ 3.

Plaintiffs Ruth J. Williams, Tiffany R. Wilson and Lynn DiNorscia were all Customer Care Tech Specialists in the Little Falls Call Center, reporting directly to Amber Hinton, a Remote Support Supervisor. Melvick Decl. ¶ 5. Ms. Hinton's supervisor was Chris Findlay, a Remote Support Operating Manager. Melvick Decl. ¶ 5. Plaintiff Rhonda Payne, who also worked in the Call Center, was a Customer Care Tech Coordinator and she reported to Adrian Luzzi, another Remote Support Operations Manager. Melvick Decl. ¶ 6. Mr. Luzzi's supervisor

was John DeBlase, a Services and Support Senior Manager. Melvick Decl. ¶ 6. Plaintiff Margaret Fritz was a Customer Service Coordinator in the Little Falls Business Center, reporting to Customer Service Integration Manager, Marsha Johnson. Melvick Decl. ¶ 7.

### C. Agilent's Investigation Into Plaintiffs' Inappropriate Conduct and the Termination of Plaintiffs' Employment.

Agilent expressly prohibits employees from misusing Company assets, including distributing and viewing sexually explicit materials through electronic mail. Melvick Decl. ¶ 8. Agilent communicates this policy to employees in its Personnel Policies and Guidelines and its Standards of Business Conduct. Melvick Decl. ¶ 8. All five Plaintiffs signed an acknowledgement of receipt of these policies in October 2001. Melvick Decl. ¶ 8.

In late November 2002, an Agilent employee reported to management that another employee sent him a sexually explicit e-mail that he found offensive. Melvick Decl. ¶ 9. The employee in question had mistakenly sent the e-mail to the complaining employee instead of the intended recipient. Melvick Decl. ¶ 9. Agilent immediately began an investigation that took several months to complete. Melvick Decl. ¶ 10. Agilent reviewed the e-mails of employees whose names appeared on the original offensive e-mail and on subsequent e-mails prohibited by Agilent's policy. Melvick Decl. ¶ 10. The majority of these employees worked in LSCA's Call Center and Business Center. Melvick Decl. ¶ 10 This investigation, conducted by members of Agilent management, Human Resources, and the legal department, occurred in late 2002 through January 2003 and was limited to the Little Falls, Delaware facility. Melvick Decl. ¶ 10.

As a result of the investigation, on January 23, 2003, discipline was taken against various Call Center and Business Center employees. Melvick Decl. ¶ 11. The level of discipline taken against an employee depended upon a comparative assessment of the volume, quantity, and nature of the sexually explicit emails, as well as whether the employee was only a recipient or a recipient <u>and</u> distributor of the emails. Melvick Decl. ¶ 11. The decisions as to how to discipline each individual employee were made by each employee's manager, all of whom were located at the Little Falls, Delaware facility. Melvick Decl. ¶ 11. The investigation and decision to terminate was also supervised by Business Human Resources Manager, Ron Hill. Melvick Decl.

¶ 11. Based on the volume and sexually explicit nature of the e-mails in their computer, the employment of all five Plaintiffs was terminated on January 23, 2003. Melvick Decl. ¶12.

### III. ARGUMENT

#### A. This Action May Properly Be Transferred Under 28 U.S.C. § 1404(a).

28 U.S.C. § 1404(a) provides: "[f]or the convenience of parties and witnesses, in the interests of justice, a district court may transfer any civil action to any other district or division where it might have been brought." Under § 1404(a), Courts must balance, as a practical matter, the plaintiff's choice of forum against the burden of litigating in an inconvenient forum. *Decker Coal v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986) (*Decker Coal*). Such determination is addressed to the inherent discretion of the trial court. *Commodity Futures Trading Comm'n v. Savage*, 611 F.2d 270, 279 (9th Cir. 1979) (citing *Van Dusen v. Barack*, 376 U.S. 612, 622, 84 S. Ct. 805 (1964)). The ultimate goal of a Court in analyzing a motion to transfer venue is to serve both the convenience of the parties and witnesses, as well as the interests of justice. *Mercury Serv., Inc. v. Allied Bank of Texas*, 117 F.R.D. 147, 154-55 (C.D. Cal. 1987), *aff'd*, 907 F.2d 154 (9th Cir. 1990).

In making the determination to transfer a case, Courts look at the following factors: (1) whether the transferee district is one where the action might have been brought; (2) the convenience of the parties and witnesses; and (3) whether transferring will promote the interests of justice. *Goodyear Tire & Rubber v. McDonnell Douglas Corp.*, 820 F. Supp. 503 (C.D. Cal. 1992) (citing *Mercury Serv., Inc. v. Allied Bank of Texas*, 117 F.R.D. 147, 154-55 (C.D. Cal. 1987), *aff'd*, 907 F.2d 154 (9th Cir. 1990).) Here, as discussed below, all of these factors weigh heavily in favor of transfer.

#### B. Venue is Proper in the District Of Delaware.

A district court is one in which an action could "have been brought" under 28 U.S.C. § 1404(a) if: (1) it has subject matter jurisdiction; (2) the defendant(s) would have been subject to personal jurisdiction; and (3) venue would have been proper. *Hoffman v. Blaski*, 363 U.S. 335, 343-344, 80 S. Ct. 1084, 1089-1090 (1960). Venue is governed by 28 U.S.C. § 1391. Section

1391(b) provides that in a non-diversity action,[1] venue is proper where: "(1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred ... or (3) a judicial district in which any defendant may be found...."

Here, venue is proper in the District of Delaware. Subject matter jurisdiction exists by virtue of a federal question presented under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1144.[2] Agilent, by virtue of being a Delaware corporation, was and is subject to personal jurisdiction in Delaware. Further, Delaware is the state where all of the events giving rise to Plaintiffs' claims occurred.

### C. The Convenience of the Parties Favors Transfer to Delaware.

Normally, a plaintiff's choice of forum is given "special weight." *Decker Coal, supra,* 805 F.2d at 843. However, where a plaintiff's choice of forum is a district <u>other than one in which he or she resides</u>, his or her choice will be given "considerably less weight." *Paul v. International Precious Metals Corp.*, 613 F.Supp. 174 (D.Miss. 1985); *Pacific Car And Foundry Company v. Spence*, 403 F.2d 949, 954 (9th Cir. 1968) ("the plaintiff's choice of forum commands only minimal consideration where he is not a resident of the district where he instituted suit, the operative facts have not occurred within the forum, and the forum has no particular interest in the parties or subject matter.") In such instances, courts will transfer a case back to the forum of a plaintiff's residence, even though the plaintiff may prefer to sue elsewhere. *Jordan v. Delaware and Hudson Ry. Co.*, 590 F. Supp. 997 (D.Pa. 1984).) For purposes of determining convenience of the parties, the location of a plaintiff's counsel is an <u>impermissible consideration</u>. *Soloman v. Continental American*, 472 F.2d 1043, 1047 (3d Cir. 1973).

Here, Plaintiffs have chosen a forum on the opposite side of the country from their residences. Plaintiffs worked in Delaware, their employment was terminated in Delaware and

---

[1] Plaintiff's Amended Complaint, ¶ 8 states: "Here diversity is not at issue only federal question [*sic*] is relevant."

[2] Paragraph 9 of the Amended Complaint states "[t]his Court has jurisdiction over this matter since a Federal question exists, stemming from Defendants [*sic*] denial of Plaintiffs' ERISA benefits...."

they currently live in Delaware or neighboring New Jersey. The most convenient place for Plaintiffs to litigate this matter is Delaware. Plaintiffs should not have to fly out to San Francisco for depositions and other litigation matters when the litigation could be conducted near their own homes. The fact that Plaintiffs' counsel happen to be located in San Francisco does not make this forum any more convenient for Plaintiffs or anyone else. *See Lupiani v. Wal-Mart Stores, Inc.* 2003 WL 22416414 (N.D. Cal.) (transferring a case from the Northern District to the Western District of Arkansas where "the only connection this Court seems to have with this case is the location of Plaintiffs' counsel, who reside in Oakland, California.") Delaware is the most appropriate place to conduct this litigation.

Plaintiffs' counsel will likely argue that the Northern District of California is convenient *for them* because they have brought another action against Agilent in this forum, *Williams, et al. v. Agilent Technologies, Inc.*, Case No. 3:04-cv-1810 MMC. (*See* Plaintiffs' Amended Complaint ¶ 6.) However, as stated, the convenience of Plaintiffs' counsel is completely irrelevant for the purposes of determining venue. Further, the *Williams* litigation is a separate matter that has nothing to do with the case before this Court. In October 2004, the *Williams* Plaintiffs filed a motion to certify a class action consisting of 13,400 former Agilent employees, including the Plaintiffs in this action. Declaration of Shannon Nakabayashi ("Nakabayashi Decl.") ¶ 2. Northern District Judge Maxine Chesney denied that motion on December 3, 2004, ruling that the former Agilent employees were terminated at different times, for different reasons, by different managers, relying upon different evidence, in different parts of the country. Nakabayashi Decl. ¶ 2.

Judge Chesney subsequently denied Plaintiffs' attempt to designate this case as a matter "related" to the *Williams* litigation. Nakabayashi Decl. ¶ 3. She then denied the *Williams* Plaintiffs' request for reconsideration of that ruling. Nakabayashi Decl. ¶ 3. Judge Chesney has made it abundantly clear that "every case involving Agilent employees" does not belong in this forum. Nakabayashi Decl. ¶ 4. Any tenuous connection between this case and the *Williams* matter cannot be used to justify keeping this case here in the Northern District.

**D.  Convenience of Witnesses Requires That This Matter Be Transferred to Delaware.**

Convenience of the witnesses is often the most important factor in determining whether to transfer venue. *A.J. Industries, Inc. v. United States Dist. Ct.,* 503 F.2d 384, 389 (9th Cir. 1974) (*A.J. Industries*); *Palace Exploration Co. v. Petroleum Development Co.,* 316 F.3d 1110, 1121(10th Cir. 2003).  In determining the most convenient forum for a case, courts will examine the key witnesses to be called, their location, the probable content of their testimony and the relevance of that testimony. *A.J. Industries, supra,* 503 F.3d at 389.  Where a defendant's employee witnesses are relatively numerous, transfer is favorable despite the fact that the defendant could compel their attendance. *Burstein v. Applied Extrusion Technologies, Inc.,* 829 F. Supp 106, 113 (D. Del. 1992) (fact that witnesses were defendant's employees may "mean that the [defendant] can compel their attendance at trial without the Court's assistance. Nevertheless, . . . the interests of justice would be better served by transferring the action to . . . where their attendance could be assured, not merely presumed."); *see also Thomas v. Home Depot U.S.A., Inc.,* 131 F. Supp.2d 934, 939 (E.D. Mich. 2001).

Plaintiffs here are suing for wrongful termination and breach of an implied covenant of good faith and fair dealing relating to their employment contract.  Amended Complaint ¶¶ 11-25. The key witnesses for these claims are the Plaintiffs' supervisors: Amber Hinton and Chris Findlay (for Plaintiffs Ruth Williams, Tiffany Wilson and Lynn DiNorscia), Marsha Johnson (for Plaintiff Margaret Fritz) and Adrian Luzzi and John DeBlase (for Plaintiff Rhonda Payne).  These witnesses, along with Human Resources Manager Ron Hill, will testify about the investigation into Plaintiffs' violations of Agilent's Standards of Business Conduct.  They will also testify as to the circumstances surrounding the termination of Plaintiffs' employment and the reasons behind that termination decision.  Additionally, the witnesses will testify as to the at-will nature of the Plaintiffs' employment and the implausibility of Plaintiffs' claims that they had an implied contract for continued employment.

It would be impractical, if not, impossible for these witnesses to participate in litigation in California.  Ms. Hinton and Mr. Findlay, the key witnesses as to the claims of three out of five of

the Plaintiffs, are residents of the State of Delaware. Melvick Decl. ¶ 13. Ms. Johnson and Mr. Luzzi are residents of Pennsylvania and Mr. DeBlase is a resident of New Jersey. Melvick Decl. ¶ 13. All of them could easily travel to Delaware to participate in the litigation. Finally, Mr. Hill is a resident of Georgia. Melvick Decl. ¶ 13. While he may experience some inconvenience in travelling to Delaware, such inconvenience will be significantly less than the great inconvenience of travelling to California. The convenience of all witnesses mandates the transfer of this action to Delaware.

### E. The Interests of Justice Favor Transferring This Case.

The Ninth Circuit has stated:

> A motion to transfer venue under § 1404(a) requires the court to weigh multiple factors in its determination whether transfer is appropriate in a particular case. For example, the court may consider: (1) the location where the relevant agreements were negotiated and executed, (2) the state that is most familiar with the governing law, (3) the plaintiff's choice of forum, (4) the respective parties' contacts with the forum, (5) the contacts relating to the plaintiff's cause of action in the chosen forum, (6) the differences in the costs of litigation in the two forums, (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses, and (8) the ease of access to sources of proof.

*Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498 (9th Cir.2000) (citations omitted); *see also Lupiani, supra.*

Nearly all of the aforementioned factors weigh in favor of transferring this case. Plaintiffs' employment contracts were entered into and carried out entirely in the State of Delaware. Any employment issues not preempted by ERISA would be governed by Delaware law. Almost all of the anticipated evidence and witnesses in this matter are located in the State of Delaware. As a practical matter, this case would become much more burdensome and expensive if it were to proceed in California. Further, many witnesses for both side are former employees of Agilent who reside on the East Coast. Their attendance cannot be compelled in this forum. *See Reed v. Fine Oil & Chem. Co.*, 995 F.Supp. 705, 714 (E.D. TX 1998); *Joint Stock Society, etc. v. Hueblein, Inc.*, 936 F. Supp. 177, 190 (D. Del. 1996) (availability of compulsory process in

transferee court favors transfer).

## IV. CONCLUSION

There is no absolutely no reason for this action to proceed in the Northern District of California. All events took place in the State of Delaware, all evidence is in the State of Delaware, and the parties and key witnesses are all residents of Delaware or a neighboring state. For the foregoing reasons, Agilent respectfully requests that this action be transferred to the United States District Court for the District of Delaware.

Dated: February 25, 2005

MORGAN, LEWIS & BOCKIUS LLP
REBECCA D. EISEN
SHANNON BETTIS NAKABAYASHI


By _____/s/_____
Shannon Bettis Nakabayashi
Attorneys for Defendant
AGILENT TECHNOLOGIES, INC.